**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Ultra PRO International, LLC, )<br>    Plaintiff, ) | Case No.: 24-cv-04725 |
| v. ) | Judge: |
| BCW Diversified, Inc. ) | Magistrate: |
|     Defendant. ) | JURY DEMAND |

**COMPLAINT**

Plaintiff Ultra PRO International, LLC hereby files this Complaint for, *inter alia*, trademark infringement, unfair competition, and related claims against Defendant, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

**PARTIES**

1.　　Ultra PRO International, LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business located at 6049 Slauson Avenue, Commerce, California 90040. Plaintiff is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards.

2.　　Upon information and belief, Defendant BCW Diversified, Inc. ("Defendant") is a corporation incorporated under the laws of Indiana with a principal place of business located at 8984 IN-236, Middletown, Indiana 47356.

## JURISDICTION AND VENUE

3.      This is an action for trademark counterfeiting and trademark infringement, trademark

dilution, and unfair competition and false designation or origin arising under the

Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark

Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-

Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and

the Prioritizing Resources and Organization for Intellectual Property Act of 2007,

H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive

acts and practices under the laws of the State of Illinois.

4.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331,

1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 112l. This Court also has

supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. §

1367(a) because the federal and state law claims derive from a common nucleus of

operative facts.

5.      This Court has personal jurisdiction over the Defendant. Personal jurisdiction exists

specifically over the Defendant because it (directly and/or through their subsidiaries,

divisions, groups or distributors) have sufficient minimum contacts with the Northern

District of Illinois as a result of substantial business conducted within the State of

Illinois. Personal jurisdiction exists specifically over Defendant because it transacts

business in the State of Illinois and in the Northern District of Illinois. Defendant has

committed tortious acts in this District and the State of Illinois and has expressly

aimed its actions at this District and the State of Illinois with the knowledge that it

would cause harm and substantial injury to Plaintiff in the District and the State of Illinois.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant directly targets its business activities towards consumers in the State of Illinois.

### BACKGROUND FACTS

7.    Plaintiff is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards. Plaintiff has been in operation for decades and is extremely well known and famous for its products. Card game and collection enthusiasts across the nation, and the world, know Plaintiff and its products. Plaintiff's products are the epitome of protective holders for collectibles. Plaintiff leads the industry in the development and sale of products specifically designed for consumers to utilize to protect valuable and specialized game cards and collectible cards.

8.    Plaintiff is the owner of several United States trademark registrations for its products.

9.    Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 1,687,833 for the mark ULTRA PRO for "plastic pages for containing photographs, cases and the like."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 1.

10.     Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 1,857,678 for the mark ULTRA PRO for "albums for containing plastic pages for collectible cards, photographs, comic books, stamps, coins and the like; plastic protective sleeves and pages for comic books; plastic pages for containing milk caps; and plastic sleeves for collectible cards."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 2.

11.     Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark ULTRA PRO for "playmats, namely, desktops mats providing a playing surface for card games."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate is attached as Exhibit 3.

12.     Plaintiff has used the ULTRA PRO marks on goods in commerce since at least as early as September 23, 1990. Plaintiff's ULTRA PRO mark is famous in relation to Plaintiff's products.

13.     Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark PRO-BINDER for "protective binders for storing collectible trading cards and game cards; plastic and leatherette binders for storing collectible trading cards and game cards; binders containing plastic sleeves for holding, protecting, and storing collectible trading cards and game cards" and "gaming accessories, namely, protective binders for game cards and game pieces;

tabletop gaming accessories in the nature of binders with plastic pockets for holding and storing game cards and collectible trading card game cards." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 4.

14. Plaintiff has used the PRO-BINDER mark on goods in commerce since at least as early as 2012. Plaintiff's PRO-BINDER mark is famous in relation to Plaintiff's products.

15. Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,615,503 for the mark PENNY SLEEVES for "plastic holders specifically adapted for holding and protecting collectible trading cards and sports trading cards" and "card game accessories, namely, plastic card holders for game cards, collectible trading card game cards, and playing cards." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 5.

16. Plaintiff has used the PENNY SLEEVES marks on goods in commerce since at least as early as 1998. Plaintiff's PENNY SLEEVES mark is famous in relation to Plaintiff's products.

17. Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,615,452 for the mark MINI SNAP for "plastic holders specifically adapted for holding and protecting collectible trading cards and sports trading cards" and "card game accessories, namely, plastic card holders for game cards, collectible trading card game cards, and playing cards." The registration is

valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 6.

18.   Plaintiff has used the MINI SNAP mark on goods in commerce since at least as early as 1996. Plaintiff's MINI SNAP mark is famous in relation to Plaintiff's products.

19.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 2,938,691 for the mark DECK VAULT for "containers for storing collectible cards." This registration for the mark DECK VAULT is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 7.

20.   Plaintiff has used the DECK VAULT mark on goods in commerce since at least as early as October 15, 2003. Plaintiff's DECK VAULT mark is famous in relation to Plaintiff's products.

21.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark CHROMAFUSION TECHNOLOGY for "plastic material sold as a component of plastic protective sleeves having an opaque side and translucent side for gaming cards and specifically adapted for use in card game competitions and tournaments; plastic material sold as a component of plastic holders in the nature of sleeves having an opaque side and translucent side specifically adapted for holding and protecting game cards and for use in card game competitions and tournaments." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 8.

22.     Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,976,683 for the mark TOPLOADER for "plastic holders for gaming cards; plastic holders for trading cards."  The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 9.

23.     Plaintiff has used the TOPLOADER mark on goods in commerce since at least as early as 1998. Plaintiff's TOPLOADER mark is famous in relation to Plaintiff's products.

24.     Upon information and belief, Defendant is a corporation that designs, manufactures, and sells products designed to protect, store, and display collectibles, including trading cards and playing cards.

25.     The products that Defendant sells directly compete with the products sold by Plaintiff.

26.     Defendant sells plastic card holders under the name "Pro Pages." A genuine and authentic website printout of Defendant's Pro Pages product is attached as Exhibit 10.

27.     Defendant sells plastic card holders under the name "Pro 8-Pocket." A genuine and authentic website printout of Defendant's Pro 8-Pocket product is attached as Exhibit 11.

28.     Defendant sells plastic card holders of various sizes using the term "Pro [#]-Pocket" where the number depends on the number of pockets found on the holder.

29.     Upon information and belief, Defendant's Pro Pages and Pro [#]-Pocket  products are plastic card holders intended to be inserted into metal clamp binders.

30.     Defendant's Pro Pages and Pro [#]-Pocket products infringe Plaintiff's ULTRA PRO and PRO-BINDER trademarks.

31.     Defendant's Pro Pages and Pro [#]-Pocket product names are confusingly similar to Plaintiff's ULTRA PRO and PRO-BINDER trademarks.

32.     Defendant's Pro Pages and Pro [#]-Pocket product names create a false association and false designation of origin with Plaintiff.

33.     Defendant's Pro Pages and Pro [#]-Pocket product names dilute the distinctiveness of Plaintiff's ULTRA PRO and PRO-BINDER trademarks.

34.     Defendant sells plastic card holders under the name "Card Sleeves." Defendant refers to these Card Sleeves as "penny sleeves" on its website. A genuine and authentic website printout of Defendant's Card Sleeves showing it refer to the product as "penny sleeves" is attached as Exhibit 12.

35.     Defendant's use of the term "penny sleeves" is infringes Plaintiff's PENNY SLEEVES trademark.

36.     Defendant's use of the term "penny sleeves" is confusingly similar to Plaintiff's PENNY SLEEVES trademark.

37.     Defendant's use of the term "penny sleeves" creates a false association and false designation of origin with Plaintiff.

38.     Defendant's use of the term "penny sleeves" is dilutes the distinctiveness of Plaintiff's PENNY SLEEVES trademark.

39.     Defendant sells a plastic card holder under the name Mini Snap. A genuine and authentic website printout of Defendant's Mini Snap product is attached as Exhibit 13

40.     Defendant's Mini Snap product infringes Plaintiff's MINI SNAP trademark.

41.    Defendant's Mini Snap product name is confusingly similar to Plaintiff's MINI
       SNAP trademark.

42.    Defendant's Mini Snap product name creates a false association and false designation
       of origin with Plaintiff.

43.    Defendant's Mini Snap product name dilutes the distinctiveness of Plaintiff's MINI
       SNAP trademark.

44.    Defendant sells a container for holding collectible cards under the name Deck Vault.
       A genuine and authentic website printout of Defendant's Deck Vault product is
       attached as Exhibit 14.

45.    Defendant's Deck Vault product infringes Plaintiff's DECK VAULT trademark.

46.    Defendant's Deck Vault product name is confusingly similar to Plaintiff's DECK
       VAULT trademark.

47.    Defendant's Deck Vault product name creates a false association and false
       designation of origin with Plaintiff.

48.    Defendant's Deck Vault product name dilutes the distinctiveness of Plaintiff's DECK
       VAULT trademark.

49.    Defendant sells a plastic card holder under the name Chroma. A genuine and
       authentic website printout of Defendant's Chroma product is attached as Exhibit 16.

50.    Defendant's Chroma product infringes Plaintiff's CHROMAFUSION
       TECHNOLOGY trademark.

51.    Defendant's Chroma product name is confusingly similar to Plaintiff's
       CHROMAFUSION TECHNOLOGY trademark.

52.     Defendant's Chroma product name creates a false association and false designation of origin with Plaintiff.

53.     Defendant sells a plastic card holder under the name Toploaders. A genuine and authentic website printout of Defendant's Topladers product is attached as Exhibit 15.

54.     Defendant sells a plastic card holder under the name Topload. A genuine and authentic website printout of Defendant's Toplad product is attached as Exhibit 16.

55.     Defendant's Toploaders and Topload products infringe Plaintiff's TOPLOADER trademark.

56.     Defendant's Toploaders and Topload product names are confusingly similar to Plaintiff's TOPLOADER trademark.

57.     Defendant's Toploaders and Topload product names create a false association and false designation of origin with Plaintiff.

58.     Defendant's Toploaders and Topload product names dilute the distinctiveness of Plaintiff's TOPLOADER trademark.

## COUNT ONE: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 1,687,833 (15 U.S.C. § 1114)

59.     The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

60.     Plaintiff owns trademark rights in valid U.S. Registration No. 1,687,833 for the mark ULTRA PRO.

61.     The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  Plaintiff's mark is highly distinctive and has become universally associated in the public mind with

Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

62.    Defendant sells products through the same channels of trade as Plaintiff.

63.    Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

64.    Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

65.    Defendant is using a mark similar to Plaintiff's ULTRA PRO mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

66.    Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

67.    Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT TWO: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 1,687,833 (15 U.S.C. § 1125(a))

68.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

69.    The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

70.    By misappropriating and using the Plaintiff's mark and trade names, Defendant misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

71.    Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

72.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

73.     The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not
        enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill
        and reputation.

**COUNT THREE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG.**

**NO. 1,687,833 (15 U.S.C. § 1125(c))**

74.     The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth
        herein.

75.     Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

76.     Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to
        promote its products for decades.

77.     Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

78.     Plaintiff has spent large amounts of money over numerous years marketing and
        advertising its ULTRA PRO mark.

79.     Taking into account the duration, extent, geographic reach of Plaintiff's advertising,
        the amount volume, and geographic extent of sales offered under Plaintiff's mark, and
        the high degree of actual recognition of the ULTRA PRO mark among the general
        consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-
        known and famous symbol of Plaintiff's products and as a designation of the source
        of Plaintiff's products.

80.     Upon information and belief, Plaintiff's ULTRA PRO mark became famous before
        Defendant began using any similar mark.

81. Defendant is diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

82. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

83. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

84. As a result of Defendant's conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

## COUNT FOUR: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 1,857,678 (15 U.S.C. § 1114)

85. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

86. Plaintiff owns trademark rights in valid U.S. Registration No. 1,857,678 for the mark ULTRA PRO.

87. The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

88. Defendant sells products through the same channels of trade as Plaintiff.

89. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

90. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

91. Defendant is using a mark similar to Plaintiff's ULTRA PRO mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

92. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

93. Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT FIVE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 1,857,678 (15 U.S.C. § 1125(a))

94. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

95. The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

96. By misappropriating and using the Plaintiff's mark and trade names, Defendant misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

97. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

98. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

99.     The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not

enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill

and reputation.

**COUNT SIX: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO.**

**1,857,678 (15 U.S.C. § 1125(c))**

100.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

101.    Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

102.    Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to

promote its products for decades.

103.    Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

104.    Plaintiff has spent large amounts of money over numerous years marketing and

advertising its ULTRA PRO mark.

105.    Taking into account the duration, extent, geographic reach of Plaintiff's advertising,

the amount volume, and geographic extent of sales offered under Plaintiff's mark, and

the high degree of actual recognition of the ULTRA PRO mark among the general

consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-

known and famous symbol of Plaintiff's products and as a designation of the source

of Plaintiff's products.

106.    Upon information and belief, Plaintiff's ULTRA PRO mark became famous before

Defendant began using any similar mark.

107. Defendant is diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

108. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

109. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

110. As a result of Defendant's conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

## COUNT SEVEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1114)

111. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

112. Plaintiff owns trademark rights in valid U.S. Registration No. 4,691,748 for the mark ULTRA PRO.

113. The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark
is highly distinctive and has become universally associated in the public mind with
Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the
source of the very highest quality products.

114. Defendant sells products through the same channels of trade as Plaintiff.

115. Without the Plaintiff's authorization or consent, and having knowledge of the
Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that
Defendants' products are sold using a mark identical or confusingly similar to the
Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or
sold products to the consuming public in direct competition with Plaintiff's sale of
genuine products, in or affecting interstate commerce.

116. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction
with Defendant's products is likely to cause and is causing confusion, mistake and
deception among the general purchasing public as to the origin of the Defendant's
products, and is likely to deceive the public into believing the products being sold by
Defendants originate from, are associated with or are otherwise authorized by the
Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and
sales.

117. Defendant is using a mark similar to Plaintiff's ULTRA PRO mark that is in violation
of the federal trademark laws including 15 U.S.C. § 1114.

118. Plaintiff has no adequate remedy at law and, if Defendant's activities are not
enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its
goodwill and reputation.

119. Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT EIGHT: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1125(a))

120. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

121. The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

122. By misappropriating and using the Plaintiff's mark and trade names, Defendant misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

123. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

124. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

125.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT NINE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1125(c))

126.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

127.   Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

128.   Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to promote its products for decades.

129.   Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

130.   Plaintiff has spent large amounts of money over numerous years marketing and advertising its ULTRA PRO mark.

131.   Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the ULTRA PRO mark among the general consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

132.   Upon information and belief, Plaintiff's ULTRA PRO mark became famous before Defendant began using any similar mark.

133.    Defendant is diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

134.    Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

135.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

136.    As a result of Defendant's conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT TEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1114)**

137.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

138.    Plaintiff owns trademark rights in valid U.S. Registration No. 7,395,393 for the mark PRO-BINDER.

139.    The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark
is highly distinctive and has become universally associated in the public mind with
Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the
source of the very highest quality products.

140. Defendant sells products through the same channels of trade as Plaintiff.

141. Without the Plaintiff's authorization or consent, and having knowledge of the
Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that
Defendants' products are sold using a mark identical or confusingly similar to the
Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or
sold products to the consuming public in direct competition with Plaintiff's sale of
genuine products, in or affecting interstate commerce.

142. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction
with Defendant's products is likely to cause and is causing confusion, mistake and
deception among the general purchasing public as to the origin of the Defendant's
products, and is likely to deceive the public into believing the products being sold by
Defendants originate from, are associated with or are otherwise authorized by the
Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and
sales.

143. Defendant is using a mark similar to Plaintiff's PRO-BINDER mark that is in
violation of the federal trademark laws including 15 U.S.C. § 1114.

144. Plaintiff has no adequate remedy at law and, if Defendant's activities are not
enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its
goodwill and reputation.

145.    Defendant has caused injury to Plaintiff, is likely to continue causing injury to
        Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable
        attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT ELEVEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1125(a))

146.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth
        herein.

147.    The products sold and offered for sale by Defendant are of the same nature and type
        as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,
        Defendant's use of a mark similar to Plaintiff's PRO-BINDER mark is likely to cause
        confusion to the general purchasing public.

148.    By misappropriating and using the Plaintiff's mark and trade names, Defendant
        misrepresents and falsely describes to the general public the origin and source of the
        Defendant's products and creates a likelihood of confusion by consumers as to the
        source of such merchandise.

149.    Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer
        for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's
        mark creates express and implied misrepresentations that Defendant's products were
        created, authorized or approved by the Plaintiff, all to Defendant's profit and to the
        Plaintiff's great damage and injury.

150.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15
        U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product
        images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

151.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not
       enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill
       and reputation.

## COUNT TWELVE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1125(c))

152.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth
       herein.

153.   Plaintiff's PRO-BINDER mark is an inherently distinctive trademark.

154.   Plaintiff has exclusively and exhaustively used the PRO-BINDER trademark to
       promote its products for decades.

155.   Plaintiff has generated vast sales over the years under the PRO-BINDER mark.

156.   Plaintiff has spent large amounts of money over numerous years marketing and
       advertising its PRO-BINDER mark.

157.   Taking into account the duration, extent, geographic reach of Plaintiff's advertising,
       the amount volume, and geographic extent of sales offered under Plaintiff's mark, and
       the high degree of actual recognition of the PRO-BINDER mark among the general
       consuming public of the United States, Plaintiff's PRO-BINDER mark is a well-
       known and famous symbol of Plaintiff's products and as a designation of the source
       of Plaintiff's products.

158.   Upon information and belief, Plaintiff's PRO-BINDER mark became famous before
       Defendant began using any similar mark.

159. Defendant is diluting and destroying the distinctiveness of Plaintiff's PRO-BINDER mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

160. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's PRO-BINDER mark.

161. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

162. As a result of Defendant's conduct and actions, Plaintiff's PRO-BINDER trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive PRO-BINDER trademark, in violation of 15 U.S.C. § 1125(c).

## COUNT THIRTEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,615,503 (15 U.S.C. § 1114)

163. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

164. Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,503 for the mark PENNY SLEEVES.

165. The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

166. Defendant sells products through the same channels of trade as Plaintiff.

167. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

168. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

169. Defendant is using a mark similar to Plaintiff's PENNY SLEEVES mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

170. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

171.   Defendant has caused injury to Plaintiff, is likely to continue causing injury to
       Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable
       attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT FOURTEEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,503 (15 U.S.C. § 1125(a))

172.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth
       herein.

173.   The products sold and offered for sale by Defendant are of the same nature and type
       as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,
       Defendant's use of a mark similar to Plaintiff's PENNY SLEEVES mark is likely to
       cause confusion to the general purchasing public.

174.   By misappropriating and using the Plaintiff's mark and trade names, Defendant
       misrepresents and falsely describes to the general public the origin and source of the
       Defendant's products and creates a likelihood of confusion by consumers as to the
       source of such merchandise.

175.   Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer
       for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's
       mark creates express and implied misrepresentations that Defendant's products were
       created, authorized or approved by the Plaintiff, all to Defendant's profit and to the
       Plaintiff's great damage and injury.

176.   Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15
       U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product
       images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

177.    The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not

enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill

and reputation.

## COUNT FIFTEEN: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK

## REG. NO. 6,615,503 (15 U.S.C. § 1125(c))

178.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

179.    Plaintiff's PENNY SLEEVES mark is an inherently distinctive trademark.

180.    Plaintiff has exclusively and exhaustively used the PENNY SLEEVES trademark to

promote its products for decades.

181.    Plaintiff has generated vast sales over the years under the PENNY SLEEVES mark.

182.    Plaintiff has spent large amounts of money over numerous years marketing and

advertising its PENNY SLEEVES mark.

183.    Taking into account the duration, extent, geographic reach of Plaintiff's advertising,

the amount volume, and geographic extent of sales offered under Plaintiff's mark, and

the high degree of actual recognition of the PENNY SLEEVES mark among the

general consuming public of the United States, Plaintiff's PENNY SLEEVES mark is

a well-known and famous symbol of Plaintiff's products and as a designation of the

source of Plaintiff's products.

184.    Upon information and belief, Plaintiff's PENNY SLEEVES mark became famous

before Defendant began using any similar mark.

185.    Defendant is diluting and destroying the distinctiveness of Plaintiff's PENNY
        SLEEVES mark by eroding the public's exclusive identification of the mark with
        Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish
        Plaintiff's products.

186.    Considering the degree of similarity between the marks, the degree of inherent or
        acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an
        association with Plaintiff, Defendant's actions are greatly diminishing and causing
        dilution by blurring of Plaintiff's PENNY SLEEVES mark.

187.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade
        on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of
        Plaintiff.

188.    As a result of Defendant's conduct and actions, Plaintiff's PENNY SLEEVES
        trademark has been diluted, blurred, and diminished. Defendant has caused, and will
        continue to cause, irreparable injury to Plaintiff's goodwill and business reputation,
        and dilution of the distinctiveness and value of Plaintiff's famous and distinctive
        PENNY SLEEVES trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT SIXTEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S.**
**TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1114)**

189.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth
        herein.

190.    Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,452 for the mark
        MINI SNAP.

191.    The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

192. Defendant sells products through the same channels of trade as Plaintiff.

193. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

194. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

195. Defendant is using a mark similar to Plaintiff's MINI SNAP mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

196. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

197.    Defendant has caused injury to Plaintiff, is likely to continue causing injury to

        Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable

        attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT SEVENTEEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF
## ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(a))

198.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

        herein.

199.    The products sold and offered for sale by Defendant are of the same nature and type

        as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,

        Defendant's use of a mark similar to Plaintiff's MINI SNAP mark is likely to cause

        confusion to the general purchasing public.

200.    By misappropriating and using the Plaintiff's mark and trade names, Defendant

        misrepresents and falsely describes to the general public the origin and source of the

        Defendant's products and creates a likelihood of confusion by consumers as to the

        source of such merchandise.

201.    Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer

        for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's

        mark creates express and implied misrepresentations that Defendant's products were

        created, authorized or approved by the Plaintiff, all to Defendant's profit and to the

        Plaintiff's great damage and injury.

202.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15

        U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product

        images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

203.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not

enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill

and reputation.

## COUNT EIGHTEEN: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(c))

204.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

205.   Plaintiff's MINI SNAP mark is an inherently distinctive trademark.

206.   Plaintiff has exclusively and exhaustively used the MINI SNAP trademark to promote

its products for decades.

207.   Plaintiff has generated vast sales over the years under the MINI SNAP mark.

208.   Plaintiff has spent large amounts of money over numerous years marketing and

advertising its MINI SNAP mark.

209.   Taking into account the duration, extent, geographic reach of Plaintiff's advertising,

the amount volume, and geographic extent of sales offered under Plaintiff's mark, and

the high degree of actual recognition of the MINI SNAP mark among the general

consuming public of the United States, Plaintiff's MINI SNAP mark is a well-known

and famous symbol of Plaintiff's products and as a designation of the source of

Plaintiff's products.

210.   Upon information and belief, Plaintiff's MINI SNAP mark became famous before

Defendant began using any similar mark.

211. Defendant is diluting and destroying the distinctiveness of Plaintiff's MINI SNAP mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

212. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's MINI SNAP mark.

213. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

214. As a result of Defendant's conduct and actions, Plaintiff's MINI SNAP trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

## COUNT NINETEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1114)

215. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

216. Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,452 for the mark DECK VAULT.

217. The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

218. Defendant sells products through the same channels of trade as Plaintiff.

219. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

220. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

221. Defendant is using a mark similar to Plaintiff's DECK VAULT mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

222. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

223.    Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWENTY: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(a))**

224.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

225.    The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's DECK VAULT mark is likely to cause confusion to the general purchasing public.

226.    By misappropriating and using the Plaintiff's mark and trade names, Defendant misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

227.    Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

228.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

229.    The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT TWENTY-ONE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(c))

230.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

231.    Plaintiff's DECK VAULT mark is an inherently distinctive trademark.

232.    Plaintiff has exclusively and exhaustively used the DECK VAULT trademark to promote its products for decades.

233.    Plaintiff has generated vast sales over the years under the DECK VAULT mark.

234.    Plaintiff has spent large amounts of money over numerous years marketing and advertising its DECK VAULT mark.

235.    Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the DECK VAULT mark among the general consuming public of the United States, Plaintiff's DECK VAULT mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

236.    Upon information and belief, Plaintiff's DECK VAULT mark became famous before Defendant began using any similar mark.

237.    Defendant is diluting and destroying the distinctiveness of Plaintiff's DECK VAULT mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

238.    Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's DECK VAULT mark.

239.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

240.    As a result of Defendant's conduct and actions, Plaintiff's DECK VAULT trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive DECK VAULT trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT TWENTY-TWO: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 7,003,716 (15 U.S.C. § 1114)**

241.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

242.    Plaintiff owns trademark rights in valid U.S. Registration No. 7,003,716 for the mark CHROMAFUSION TECHNOLOGY.

243.    The Plaintiff's mark and the goodwill of the business associated with it in the United

States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

244. Defendant sells products through the same channels of trade as Plaintiff.

245. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

246. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

247. Defendant is using a mark similar to Plaintiff's CHROMAFUSION TECHNOLOGY mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

248. Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

249. Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

## COUNT TWENTY-THREE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 7,003,716 (15 U.S.C. § 1125(a))

250. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

251. The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's CHROMAFUSION TECHNOLOGY mark is likely to cause confusion to the general purchasing public.

252. By misappropriating and using the Plaintiff's mark and trade names, Defendant misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

253. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

254. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate

commerce, constitutes a false designation of origin and unfair competition.

255. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT TWENTY-FOUR: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1114)

256. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

257. Plaintiff owns trademark rights in valid U.S. Registration No. 6,976,683 for the mark TOPLOADER.

258. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

259. Defendant sells products through the same channels of trade as Plaintiff.

260. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendant has manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

261. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction

with Defendant's products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendant's products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

262.    Defendant is using a mark similar to Plaintiff's TOPLOADER mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

263.    Plaintiff has no adequate remedy at law and, if Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

264.    Defendant has caused injury to Plaintiff, is likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWENTY-FIVE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1125(a))**

265.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

266.    The products sold and offered for sale by Defendant are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendant's use of a mark similar to Plaintiff's TOPLOADER mark is likely to cause confusion to the general purchasing public.

267.    By misappropriating and using the Plaintiff's mark and trade names, Defendant

misrepresents and falsely describes to the general public the origin and source of the Defendant's products and creates a likelihood of confusion by consumers as to the source of such merchandise.

268.   Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendant's products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendant's products were created, authorized or approved by the Plaintiff, all to Defendant's profit and to the Plaintiff's great damage and injury.

269.   Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, genuine product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

270.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT TWENTY-SIX: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1125(c))

271.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

272.   Plaintiff's TOPLOADER mark is an inherently distinctive trademark.

273.   Plaintiff has exclusively and exhaustively used the TOPLOADER trademark to promote its products for decades.

274.   Plaintiff has generated vast sales over the years under the TOPLOADER mark.

275.    Plaintiff has spent large amounts of money over numerous years marketing and advertising its TOPLOADER mark.

276.    Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the TOPLOADER mark among the general consuming public of the United States, Plaintiff's TOPLOADER mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

277.    Upon information and belief, Plaintiff's TOPLOADER mark became famous before Defendant began using any similar mark.

278.    Defendant is diluting and destroying the distinctiveness of Plaintiff's TOPLOADER mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

279.    Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendant's intent to create an association with Plaintiff, Defendant's actions are greatly diminishing and causing dilution by blurring of Plaintiff's TOPLOADER mark.

280.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

281.    As a result of Defendant's conduct and actions, Plaintiff's TOPLOADER trademark has been diluted, blurred, and diminished. Defendant has caused, and will continue to

cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution

of the distinctiveness and value of Plaintiff's famous and distinctive TOPLOADER

trademark, in violation of 15 U.S.C. § 1125(c).

## COUNT TWENTY-SEVEN: ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES (815 ILCS 510)

282.  The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth

herein.

283.  The products sold and offered for sale by Defendant are of the same nature and type

as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such,

Defendant's use of similar marks as those of Plaintiffs is likely to cause confusion to

the general purchasing public.

284.  By misappropriating and using the Plaintiff's marks and trade names, Defendant

misrepresents and falsely describes to the general public the origin and source of the

Defendant's products and creates a likelihood of confusion by consumers as to the

source of such merchandise.

285.  Defendant's unlawful, unauthorized and unlicensed manufacture, distribution, offer

for sale and/or sale of the Defendant's products under similar marks creates express

and implied misrepresentations that the products were created, authorized or

approved by the Plaintiff, all to the Defendant's profit and to the Plaintiff's great

damage and injury.

286.  Defendant's aforesaid acts are in violation of the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS 510/2 et seq., in that Defendant's use of the Plaintiff's marks

and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

287.    Plaintiff has no adequate remedy at law and, if the Defendant's activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWENTY-EIGHT: TRADEMARK DILUTION UNDER THE ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT (765 ILCS 1036/65)

288.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

289.    Through Plaintiff's longstanding use of the above trademarks in commerce in the State of Illinois, Plaintiff's marks have become impressed upon the minds of the relevant trade and consuming public as identifying Plaintiff. The above trademarks have each become a well-known and famous symbol of Plaintiff's products among Illinois consumers.

290.    Defendant's actions are diluting and destroying the distinctiveness of Plaintiff's strong, distinctive, and famous trademarks by eroding the public's exclusive identification of the above trademarks with Defendant, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish Plaintiff's products.

291.    Defendant's actions are greatly diminishing and blurring the source-identifying capability of the Plaintiff's above trademarks through their marketing, advertising, and sale of unapproved products.

292.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's trademarks or to cause dilution of the above marks, to the great and irreparable injury of Plaintiff.

293.    In addition to being entitled to injunctive relief under 765 ILCS 1036/65 for trademark dilution, Plaintiff is entitled to the remedies listed in 765 ILCS 1036/70, including "judgment for an amount not to exceed 3 times the profits and damages or reasonable attorneys' fees of the prevailing party, or both," because Defendant "willfully intended to trade on [Plaintiff's] reputation or to cause dilution of" the Plaintiff's above trademarks.

294.    As a result of Defendants' conduct and actions, Plaintiff's above trademarks have been diluted, blurred, and diminished. Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputations, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive above trademarks.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1.    Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendant and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from unfairly competing with Plaintiff by using Plaintiff's trademarks, or mark confusingly similar to Plaintiff's trademarks.

2.         Award Plaintiff restitution in an amount to be determined at trial.

3.         Award Plaintiff damages in an amount to be determined at trial, including without limitation, Plaintiff's lost revenues and profits.

4.         That Defendant account for and pay over to Plaintiff any and all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of each of Plaintiff's marks be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117(b);

5.         Alternatively, award Plaintiff statutory damages for each of Plaintiff's marks as provided by 15 U.S.C. § 1117(c).

6.         Award Plaintiff pre-judgment and post-judgment interest.

7.         Award Plaintiff's attorneys' fees and costs.

8.         Award Plaintiff any such other relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues that are triable by jury.

Respectfully Submitted,

Dated: June 6, 2024                            By: _____ /s/ Kevin Keener _____

Kevin J. Keener
ARDC # 6296898
Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
kevin.keener@keenerlegal.com